**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SHEILA LANG, | |
| Plaintiff, | |
| v. | No. 20-cv-1199 (TSC) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

**<u>OPINION & ORDER</u>**

Plaintiff Sheila Lang, a former teacher at the District of Columbia Public Schools

("DCPS"), filed this lawsuit against the District of Columbia and former DCPS Principal Anna

Krughoff, alleging employment discrimination and First Amendment violations.  In March 2023,

the court granted in part and denied in part Defendant's motion to dismiss the Third Amended

Complaint, allowing Plaintiff to proceed with her First Amendment claim against Krughoff and

her hostile work environment claims against the District.  *See* Mem. Op. at 28, ECF No. 25.[1]  As

the case proceeded to discovery, the court set a June 2023 deadline for amended pleadings.  *See*

Scheduling Order, ECF No. 29.

Approximately two-and-a-half years after that deadline, in January 2026, Plaintiff moved

for leave to file a Fourth Amended Complaint.  *See* Pl.'s Mot., ECF No. 60; *see also* Proposed

Fourth Am. Compl., ECF No. 60-1 ("FAC").  She seeks to revive her dismissed First

Amendment municipal liability and retaliation claims and add allegations to buttress her non-

dismissed claims.  *See* Pl.'s Mot. at 3–4.  Defendants oppose further amendment.  *See* Defs.'

---

[1]  For a more detailed overview of this case's background and procedural history, see
Memorandum Opinion, ECF No. 25.

Opp'n, ECF No. 68.  Despite receiving two extensions to reply to Defendants' Opposition, *see* Min. Order (Apr. 15, 2026), Min. Order (Apr. 16, 2026), Plaintiff's counsel was late to file a Reply, *see* Pl.'s Reply, ECF No. 73.  Although the court will GRANT Plaintiff's motion to accept the late filed and overlength Reply, ECF No. 74, the court will DENY Plaintiff's motion for leave to file a Fourth Amended Complaint, ECF No. 60.

## I.    LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a) ordinarily governs a motion for leave to amend a complaint.  Under Rule 15(a)'s "liberal standard for granting leave," *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996), "leave to amend should be freely given unless there is a good reason, such as futility, to the contrary." *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996).  But when a plaintiff seeks to amend after the scheduling order deadline for amendment has passed, "the more stringent good cause standard imposed by" Rule "16(b) applies." *In re Papst Licensing GmbH & Co. KG Litig.*, 762 F. Supp. 2d 56, 59 (D.D.C. 2011); *see also Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021) ("The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted."); *Cheeks v. Belmar*, 162 F.4th 899, 907 (8th Cir. 2025) ("Rule 16(b)—rather than Rule 15(a)—governs the amendment of pleadings after the [scheduling order] deadline expires.").

"To show good cause under" that "more stringent" standard, "the moving party must show both diligence *and* a lack of prejudice to the opposing parties." *In re Papst*, 762 F. Supp. 2d at 59 (emphasis added).  The primary consideration is diligence; "if the party was not diligent, the inquiry should end." *United States v. Kellogg Brown & Root Servs.*, 285 F.R.D. 133, 136 (D.D.C. 2012) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.

1992)).  "Only after the movant shows good cause may the court consider whether amendment is [also] proper under Rule 15(a)."  *Cheeks*, 162 F.4th at 907; *see also* 6A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1522.2 (3d ed. 2026) ("[T]he Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15.").

## II.     ANALYSIS

Plaintiff's counsel contends that during discovery he learned of evidence to support ten sets of new allegations.  *See* Pl.'s Mot. at 2–3.  Defendants argue that Plaintiff's counsel had most of this evidence by early April 2024, and that his one-year-and-nine-month delay in moving to amend—approximately two-and-a-half years after the amended pleadings deadline—reflects a lack of diligence.  *See* Defs.' Opp'n at 10.  The court agrees with Defendants.

### a.  Family Issues and Workload

As an initial matter, Plaintiff's counsel attributes roughly six months of delay to his obligations as his father's "primary caregiver" and his father's death.  Pl.'s Reply at 7, ECF No. 73.  Specifically, counsel's father became "terribly ill" around late April 2024 and passed away on September 2, 2024.  *Id.*  According to Plaintiff's counsel, that means any delay until mid-October 2024—"or about one month after [his] father's funeral"—is categorically justified.  *Id.* Plaintiff's counsel also justifies this and other delays by pointing to his responsibilities "working for other clients."  *Id.* at 8.  But although counsel "regrettably suffered through a period of personal hardship" and had competing work demands, "'a lawyer's duty of diligence transcends both upheaval at work and personal tragedy.'"  *Strong-Fischer v. Peters*, 554 F. Supp. 2d 19, 25 (D.D.C. 2008) (quoting *Davila-Alvarez v. Escuela de Medicina Universidad Cent. del Caribe*,

257 F.3d 58, 65 (1st Cir. 2001)).  Even if personal tragedy excuses some delay, it cannot justify

six months' worth.  *Cf. Davila-Alvarez*, 257 F.3d at 65 (reasoning that counsel "was not

relieved" of his "ongoing responsibility to inquire into the status of a case" by "his brother's

untimely death"); *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006) (holding that

counsel's "abandonment of the case during discovery . . . cannot be excused by the deaths in his

family").  Nor does counsel's status as "a busy sole-practitioner . . . relieve [him] of [his] duty to

diligently pursue discovery."  *Gaines v. United States*, 54 F. App'x 797 (5th Cir. 2002).  "That

an attorney has other matters in his office which require his attention does not constitute excuse

for neglect of attention to any one matter."  *Citizens' Protective League v. Clark*, 178 F.2d 703,

704 (D.C. Cir. 1949); *see also Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 101 (1st Cir.

2003) ("Most attorneys are busy most of the time and they must organize their work so as to be

able to meet the requirements of the matters they are handling or suffer the consequences."

(cleaned up)).

### b.  New Allegations

As for the ten sets of new allegations, Plaintiff's counsel largely does not dispute that the

evidence underlying most of them was turned over in April 2024 or otherwise already available

to him.[2]  Beginning with the first two sets of new allegations, Plaintiff's counsel states that

---

[2]  The ten sets of new allegations are:  "(1) the identity of the defendants' major coconspirators; (2) relevant emails to and from those coconspirators; (3) the District's illegal, secret investigations of Lang wherein the District violated the law by never affording Lang with notice of those investigations and by never granting Lang's right to defend against those investigations; (4) the adverse actions imposed against Lang during those illegal investigations; (5) the District's elimination of Lang's salary from its fiscal year 2019 budget; (6) the District's elimination of the salaries of two black coworkers who opposed racial discrimination against Lang; (7) possible proof that the District's chancellor retaliated against Lang for her protected speech; (8) a striking example of disparate treatment between the black plaintiff and her white supervisor; (9) coworker and parent complaints about the District's racially hostile

through discovery he learned of "(1) the identity of the defendants' major coconspirators and (2) relevant emails to and from those coconspirators." Pl.'s Mot. at 2. Defendant responds that the identity of alleged co-conspirators and each email cited in the proposed Fourth Amended Complaint was disclosed in April 2024. *See* Defs.' Opp'n at 10 & n.7. Plaintiff's counsel fails to dispute that assertion in the Reply.

Turning to set 3—the District's alleged "illegal, secret investigations of Lang wherein the District violated the law by never affording Lang with notice of those investigations and by never granting Lang's right to defend against those investigations," Pl.'s Mot. at 2—Plaintiff's counsel clarified in the Reply that he was referring to "a secret reopening of DCPS's investigation of [Plaintiff's] trip to Europe." Pl.'s Reply at 11. Specifically, Plaintiff supervised a school trip for several students and a parent to Europe, but while "Plaintiff was at the departure gate . . . , the students and parent slipped away from" Plaintiff who "did not realize until the flight reached London that the rest of the group had missed the flight." Mem. Op. at 4 (cleaned up). An initial DCPS investigation found "no wrongdoing on [Plaintiff's] part with regard to the field trip." *Id.* (cleaned up). Plaintiff's counsel contends, however, that some of the documents turned over in April 2024—DC-3599 through DC-3606—contained redactions which covered up evidence relevant to the claim that DCPS had secretly reopened this investigation. Pl.'s Reply at 11. But counsel concedes that the basis for these new allegations largely comes from DC-680 through DC-682, which counsel does not dispute he received in April 2024. *Id.* In any event, Plaintiff asked for unredacted versions of DC-3599 through DC-3606 on May 12, 2025, and received them about a week later. *Id.* Notably, it took Plaintiff more than a year to address these

---

workplace; and (10) the District's materially false but secret and illegal job performance evaluations that resulted in both the elimination of Lang's job assignment and her constructive discharge." Pl.'s Mot. at 2–3.

deficiencies in the April 2024 production, which does not reflect diligence.  Moreover, Plaintiff's counsel does not explain his eight-month delay in moving to amend after he received the unredacted versions.

It is unclear what Plaintiff's counsel is referring to with set 4—"the adverse actions imposed against [Plaintiff] during those illegal investigations."  Pl.'s Mot. at 2–3.  The adverse actions alleged in the proposed Fourth Amended Complaint appear to be that Plaintiff was placed on "forced indefinite administrative leave" following her November 2017 PTA speech in which she complained of race discrimination, FAC ¶ 27(a); investigated without an opportunity to defend herself, *id.* ¶ 27(c); had her salary defunded from the FY2019 budget, *id.* ¶ 38; and had her position as a reading teacher at Cleveland excessed, *id.* ¶ 47.  Set 4 thus substantially overlaps with set 5—"the District's elimination of Lang's salary from its fiscal year 2019 budget."  Pl.'s Mot. at 3.  But the Third Amended Complaint already alleges that Plaintiff's position as a reading teacher was excessed in 2018 after Plaintiff was transferred to a different school, *see, e.g.*, Third Am. Compl. ¶ 34(a), ECF No. 15, so the elimination of that salary in the FY2019 budget is not new.  The same is true for set 6—"the District's elimination of the salaries of two black coworkers who opposed racial discrimination against Lang."  Pl.'s Mot. at 3.  The Third Amended Complaint already alleges that those positions were excessed, *see* Third Am. Compl. ¶ 26(x), (z), so this too is not new.

Set 7 concerns "possible proof that the District's chancellor retaliated against Lang for her protected speech."  Pl.'s Mot. at 3.  Specifically, documents DC-3599 through DC-3606 reflect that the DCPS Chancellor was involved in the decision to involuntarily transfer Plaintiff from Cleveland to Browne.  *See* Pl.'s Reply at 11.  Plaintiff's counsel contends that these documents contained redactions which "blotted out" the critical information when they were

initially turned over in April 2024. *Id.* at 11. But as discussed above, it was not diligent for Plaintiff's counsel to wait until May 2025 to request unredacted versions to documents he received in April 2024. Counsel has failed, moreover, to explain his eight-month delay after he received the unredacted versions to seek leave to amend.

Set 8—"a striking example of disparate treatment between the black plaintiff and her white supervisor"—concerns how Principal Krughoff was treated after a child was improperly released under her watch from a Cleveland afterschool program to a stranger in December 2017. Pl.'s Mot. at 3; *see also* Pl.'s Reply at 15–16. According to Plaintiff, the leniency Krughoff was afforded stands in stark contrast to the "racist harassment" Plaintiff received in the aftermath of the failed Europe trip. Pl.'s Reply at 16. Plaintiff's counsel contends that he learned of this incident in November 2025 through online research that was prompted by emails released to him in April 2024 mentioning media coverage at Cleveland Elementary in December 2017. *Id.* at 15. This again shows a lack of diligence. The media stories have been publicly available since December 2017 and could have been discovered by simple internet searches into Cleveland Elementary long before November 2025. In any event, Plaintiff's counsel received the emails that prompted his simple internet search in April 2024; his more than year-and-a-half delay in reviewing those emails was not diligent.

Set 9—"coworker and parent complaints about the District's racially hostile workplace"—appears to refer to a petition campaign by parents and teachers who sought to preserve the job of a Black assistant principal at Cleveland, which Plaintiff's counsel links to a "closely related petition campaign in April 2018 to preserve [Plaintiff's] employment as a Cleveland reading teacher." Pl.'s Reply at 12; *see also* FAC ¶ 43 (conceding Plaintiff "agreed to" a petition drive on her behalf in 2018). To start, it is unclear why Plaintiff's counsel needed

Page **7** of **10**

discovery to plead "closely related" petition campaigns that his client was aware of in 2018. In any event, the relevant discovery was disclosed in April and October 2024. *See* Defs.' Opp'n at 12–13; *see also* Pl.'s Reply at 13. Although Plaintiff contends some of these documents contained redactions that were not lifted until July 2025, he does not indicate that those redactions concealed the existence of the petition campaigns or parent complaints, as opposed to non-essential details like the names of the parents involved. *See* Pl.'s Reply at 12–13. Given these circumstances, Plaintiff's counsel has again failed to show diligence.

Finally, set 10 concerns "the District's materially false but secret and illegal job performance evaluations that resulted in both the elimination of Lang's job assignment and her constructive discharge." Pl.'s Mot. at 3. Defendants produced the performance evaluation and evaluation rubric in April 2024. Defs.' Opp'n at 13; Pl.'s Reply at 8, 14. Plaintiff's counsel indicates that he "studied" the rubric used to make excessing decisions in August 2024, but did not "realize[]" until more than a year later, in November 2025 that "the illegal excessing of [Plaintiff's] job assignment by way of the 'rubric' . . . needed to be alleged in a fourth amended complaint." Pl.'s Reply at 8, 14. Having possessed the relevant documents since April 2024, Plaintiff's counsel cannot characterize his delayed comprehension of their relevance and his further delay in moving to amend as the product of diligence. This is emblematic of the larger problem. Across the new allegations, the pattern is the same: Plaintiff's counsel had most of the underlying evidence since the April 2024 production or before, but then took many months, and in most instances more than a year, to review those documents, grasp their significance, and act on them. That is not diligent.

Plaintiff's counsel notes that discovery has been voluminous—Defendants produced roughly 4,500 pages of documents in response to his requests. Pl.'s Reply at 2. To the extent

Plaintiff's counsel thereby means to suggest that his delay is justified by the volume of discovery and the number of discovery disputes he raised, the court is not persuaded. *See id.* at 2, 12. Although the challenges associated with discovery in this case may have justified several months of delay for a diligent lawyer, it does not justify counsel's delay of one year and nine months in moving to amend his pleadings after the vast majority of documents were turned over in April 2024, and two and a half years after the amended pleadings deadline had passed. Because Plaintiff's counsel has failed to establish diligence, the Rule 16(b) analysis is at its end and the court need not consider whether amendment would be justified under Rule 15(a). *See Kellogg Brown*, 285 F.R.D. at 136; *Cheeks*, 162 F.4th at 907.

Plaintiff's counsel also notes that the court granted Defendants' unopposed motion to stay the Scheduling Order deadlines in November 2024 to allow the parties time to resolve discovery disputes. *See* Pl's Reply at 10; Min. Order (Nov. 26, 2024). But that order merely stayed expert discovery deadlines, the end of discovery, and summary judgment briefing; the amended pleadings deadline had already long passed. Thus, the stay of those discovery and summary judgment deadlines does not excuse counsel's considerable delay in moving to amend the pleadings based on discovery materials he already had after the amended pleadings deadline.

Finally, Plaintiff's counsel worries that because the "Third Amended Complaint never referred to [certain] evidence" learned in discovery, the court "will bar" Plaintiff from using "this newly acquired proof" at trial and summary judgment. Pl.'s Mot. at 2. That concern is largely misplaced. Although "a plaintiff is not permitted to raise new claims at the summary judgment stage, where those claims were not pleaded in the complaint," *Taylor v. Mills*, 892 F. Supp. 2d 124, 137 (D.D.C. 2012), or make a "fundamental change" to their theories of liability, *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1286 (D.C. Cir. 2019), a plaintiff is not prohibited from using

evidence obtained in discovery to support existing claims and theories merely because that evidence was not mentioned in the complaint. As the pleading that merely initiates litigation, a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), not all the evidence which supports the claim. *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1211 (D.C. Cir. 2020) (explaining that a complaint "need not set out all the precise facts on which the claim is based" (cleaned up)). "In deciding a motion for summary judgment, *the court looks beyond the pleadings* and may take into consideration affidavits, depositions, answers to interrogatories, and admissions on file[.]" *Mann-Paller Found. v. Econometric Rsch., Inc.*, 644 F. Supp. 92, 93 (D.D.C. 1986) (emphasis added). Thus, this decision does not limit Plaintiff to the evidence alleged in the Third Amended Complaint when this case moves to summary judgment, but merely holds that Plaintiff's counsel was too tardy in seeking to revive the already dismissed claims.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to accept the late filed and overlength Reply, ECF No. 74, is **GRANTED**, and Plaintiff's motion for leave to file a Fourth Amended Complaint, ECF No. 60, is **DENIED**. The parties are **ORDERED** to meet and confer and file a Joint Status Report by July 20, 2026, proposing next steps in this long-delayed litigation.

It is **SO ORDERED**.


Date: July 6, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge